# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHLEY BECKWORTH**, Individually and as administratrix of the Estate of Albert Von Beckworth-Thompson, Decedent, and on behalf of the Estate's sole beneficiary, M.B. his minor child.<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF NEW CASTLE**, a Municipal Corporation, **OFFICER HALIE ELIZABETH HOUK**, individually and in her official capacity, **OFFICER ANDREW O'ROURKE**, individually and in his official capacity, **OFFICER NATHANIEL MILLER**, individually and in his official capacity.<br><br>Defendants. | **Civil Action**<br><br>**No.:**<br><br>**COMPLAINT IN CIVIL ACTION**<br>2:23-cv-2043<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, Ashley Beckworth, Individually and as Administratrix of the Estate of Albert Von Beckworth-Thompson, Decedent, and on behalf of the Estate's sole beneficiary Decedent's minor child M.B., by and through the undersigned counsel, Todd J. Hollis, Esquire, of Todd J. Hollis Law, who files the following Complaint in Civil Action, to recover damages for injuries and death sustained as a result of excessive, unreasonable and unnecessary force used by the named Defendants during their arrest of Decedent on March 6, 2022 in violation of his rights under the United States Constitution and their failure to provide him with necessary medical care, stating in support thereof as follows:

## INTRODUCTION

This action arises from the wrongful death of Albert Von Earl Beckworth-Thompson caused by the City of New Castle and three (3) of its police officers: Halie Elizabeth Houck, Andrew O'Rourke, and Nathaniel Miller.

1. On the morning of March 6, 2022, Albert Von Earl Beckworth-Thompson (hereinafter, "the Decedent"), an unarmed 34-year-old man, died in a New Castle City residential neighborhood after the above-mentioned police officers unlawfully stopped him and two (2) City of New Castle police officers unreasonably tasered him multiple times, and kicked and punched him multiple times following which the same referenced officers -- pursuant to, *inter alia,* the custom of the City of New Castle -- failed to provide needed medical care to him and failed to assess his physical condition within a reasonable period of time. The entire horrific event was captured on video.

### The 911 Call

2. These tragic events began on March 6, 2022 when New Castle City Police Department Officers were dispatched to respond to the area of 1609 Stanton Avenue, New Castle Pennsylvania via a 911 call. Upon arrival, Officers made contact with Ms. LeAnn Marie Havelock. She is a concerned neighbor who resides in the same area and reported that a male subject had been on her front porch screaming for help.

### The Encounter

3. Officer Halie Elizabeth Houck (hereinafter, "Officer Houck") was dispatched to the scene; she was the first to locate the Decedent, and moments later Officers Andrew O'Rourke and Nathaniel Miller arrived as back up.

4. Upon her arrival, Officer Houck was asked by the Decedent to identify herself. She ignored his request; instead of introducing herself, she asked the Decedent if he was okay. He replied by saying, "Yes".

5. The Decedent calmly told Officer Houck that he thought he had been set up by his paramour. While having this conversation, his hands were exposed to indicate he was not in possession of a weapon. Further, he was not committing any crime and he was wholly compliant.

6. The Decedent asked Officer Houck if she was an honest cop, to which she replied, "Yes". The Decedent indicated to Officer Houck that he was willing to tell her anything that she needed to know.

7. Officers Miller, Houck, and O'Rourke began to approach the Decedent.  As they did so, the Decedent became fearful and attempted to take a few steps back to maintain a measure of distance between him and the three (3) officers.

8. The Decedent requested Officers Houck, Miller, and O'Rourke to show their badge numbers. Officer Houck, instead of providing this basic and simple information to provide the Decedent with reassurance and to deescalate the incident, dismissed his request by telling him to relax.

9. During this encounter, the Decedent remained submissive and demonstrated the same by raising his hands in the air to show compliance.

10. The encounter with the officers initially took place on the sidewalk in the area of Stanton Avenue and Adams Street. However, when the officers began moving towards the Decedent, he took a few steps back to maintain a measure of distance.

11. Despite having no probable cause to do so, Officer Houck attempted to physically restrain the Decedent, which increased his level of anxiety and provoked him to attempt to run away screaming, "Help me".

12. Officer O'Rourke tackled the Decedent causing him to fall and sustain injuries to his face and body. Officers Houck and Miller simply watched the encounter instead of assisting Officer O'Rourke; this allowed the Decedent the opportunity to rise to his feet and attempt to run away.

13. Had Officers Miller and Houck assisted in the arrest of the Decedent by going "hands on," he would not have been subjected to additional and unnecessary use of force measures which proximately led to his demise and untimely death.

## **The Use of Excessive Force**

14. Although Officers Miller and O'Rourke ascertained that the Decedent was not armed and presented no physical threat to them or any third party, they simultaneously tased him multiple times in the front (lower abdomen just below his heart) and his back.

15. The Decedent died of cardiac arrest following his exposure to the taser from Officers O'Rourke and Miller.

16. Defendants Miller and O'Rourke violently and unnecessarily subjected the Decedent to massive amounts of electricity by taser (via drive stuns and prongs) without giving him an adequate measure of time to comply with their directions.

17. Defendants Houck, Miller and O'Rourke tackled the Decedent causing him to fall and sustain injury to his face and body when the application of force was *not* necessary.

18. Defendant Miller aggressively kicked the Decedent without legal justification.

19. While being arrested, the Decedent told the officers that he *could not breathe*.

20. Despite his obvious and clear request for help, the Defendants again ignored his complaints and left him lying on his stomach, further restricting his respiration, and adding to his pain and suffering.

21. Shortly thereafter, the Decedent stopped moving and became markedly silent. He was clearly losing consciousness giving rise to the defendants' duty to provide him with medical treatment.

22. Instead, the Officers thought he was overdosing despite not having any information to form the opinion that he had ingested drugs, and despite the fact that the Decedent had been talking with officers for several minutes and exhibited no signs of drowsiness or other symptoms of an opiate overdose.

23. Officer Houck provided two (2) doses of Narcan to the Decedent who did not respond medically to either application.

24. Officers were also informed that the medics were still a considerable distance from the scene. Officers determined that the Decedent only had a faint pulse.

25. Instead of placing the Decedent in their patrol care and transporting him to the nearest medical facility, the officers kept him handcuffed, lying on the ground, further restricting his ability to breath.

**Failure To Provide Medical Care**

26. Following the handcuffing of the Decedent, the Officers triumphantly raised their hands and praised one another for their individual performances in restraining the Decedent.

27. It was during these precious moments that life-saving measures could/should have been performed by the Defendant Officers.

28. Instead, the Defendant Officers questioned one another to assess if any of them had sustained injury while detaining and arresting the Decedent.

29. It is hornbook law that the Defendant Officers owed the Decedent a duty of care to provide him with medical care while he was in their custody.

30. For approximately seven (7) minutes after the Decedent's arrest, while he laid on the ground motionless, the Defendant Officers provided no medical care to the Decedent, despite his pleading with them that he *could not* breathe.

31. Instead of immediately assessing his medical needs, the officers ignored his pleas even though he had been subjected to:
    a. Head injuries from two (2) falls, and being punched in the face by Officer Miller;
    b. Knee strikes from Officer O'Rourke, and;
    c. Multiple taser applications from Officers O'Rourke and Miller's Taser weapons deployed on the Decedent simultaneously.

32. Upon information and belief -- including but not exclusively limited to the facts that the Decedent told the Defendant Officers that he *could not breathe* and that the Officers were in close proximity to the Decedent when he said it-- each Defendant officer recognized or should have recognized that the Decedent was in immediate need of medical treatment, but none of them took any steps to assess the Decedent's condition or obtain medical help for him.

33. Upon information and belief, it is averred that New Castle City's official policy is to transport arrestees to the closest hospital with an emergency room. However, instead of driving the Decedent to the closest hospital with an emergency room, Officers Houck, Miller, and O'Rourke irresponsibly failed to provide him with lifesaving medical care in violation of the Decedent's constitutional rights.

34. This is a civil rights action seeking damages collectively against the above-captioned Defendants for violations of Mr. Von Earl Beckworth-Thompson's rights, privileges, and immunities guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §1983, and Pennsylvania common law.

## JURISDICTION AND VENUE

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. This Honorable Court has jurisdiction of the within matters pursuant to 28 U.S.C. § 1331 and § 1343 as the causes of action enumerated herein arise under the Constitution, treaties, or laws of the United States.

37. In particular, the causes of action enumerated herein arise under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the

United States Constitution. Further, this Honorable Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. § 1367(a).

38. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because: (a) Defendants reside in and/or conduct business in this judicial district; and/or (b) because the acts and omissions giving rise to the claims set forth herein (including specifically Mr. Albert Von Earl Beckworth-Thompson's arrest by the Defendant officers and the injuries and death resulting therefrom) occurred exclusively in this judicial district.

## **PARTIES**

39. Mr. Albert Von Earl Beckworth-Thompson was, at the time of his death, a thirty-four (34)-year-old African American man who resided in New Castle City, Pennsylvania.

40. Plaintiff is Ashley Beckworth, Administratrix of the Estate of Albert Von Earl Beckworth-Thompson. Ms. Beckworth is a resident of Memphis, Tennessee. She is the Administratrix of the Decedent's Estate to which M.B., his minor child, is the sole beneficiary.

41. Ms. Beckworth's actions on behalf of the Estate are for the benefit of M.B., the Decedent's minor child.

42. Defendant, City of New Castle, is a municipality in the Commonwealth of Pennsylvania, and, at all relevant times, employed the City of New Castle police officers who were at the scene of the Decedent's arrest and who committed and/or participated in the wrongful acts alleged herein and/or did nothing to prevent Defendant officers' illegal acts.

43. Defendant Officer Halie Elizabeth Houck, hereinafter, "Officer Houck," is/was a City of New Castle police officer who, at all relevant times, was employed by Defendant City of New Castle. At all times relevant hereto, Defendant Houck was acting within the scope of her employment as such. She is being sued both in her individual and official capacity.

44. Officer Andrew O'Rourke, hereinafter, "Officer O'Rourke," is/was a City of New Castle police officer who, at all relevant times, was employed by the Defendant City of New Castle. At all times relevant hereto, Defendant O'Rourke was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

45. Defendant Officer Nathaniel Miller, hereinafter, "Officer Miller," is/was a City of New Castle police officer who, at all relevant times, was employed by the Defendant City of

New Castle. At all times relevant hereto, Defendant Miller was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

## JURY DEMAND

46. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

47. On March 6, 2022, Mr. Von Earl Beckworth-Thompson, an unarmed 34-year-old man, was walking on Stanton Avenue in the neighborhood of New Castle City, Pennsylvania.

48. At approximately 3.25 a.m., a concerned citizen (LeAnn Havelock) contacted the City of New Castle police stating that a man was on the front porch of her residence screaming for help. This incident was captured on video.

49. Ms. Havelock indicated to Officer Houck that the Decedent had been at her home and requested help. She provided him with water, and he later ran away.

50. Shortly thereafter, Officer Houck arrived at Adams Street and Stanton Avenue and made contact with the Decedent. She asked the Decedent if he was ok. The Decedent appropriately responded and indicated, "Yes".

51. Officer Houck then asked the Decedent, "What happened?" to which the Decedent calmly responded that he believed that he had been drugged by his paramour and girlfriend.

52. The Decedent then asked Defendant Officer Houck if she was an honest cop, and she replied that she was. Moments later, Officers O'Rourke and Miller arrived on scene. When the Decedent saw them, he became fearful and asked, "Are they cool too?" During this exchange Mr. Beckworth remained calm.

53. Further, the Decedent assured Officer Houck that he had no intention of harming her and would tell her anything that she needed to know. He then attempted to explain his story to Officer Houck. Video footage will show that he was unarmed and compliant while talking with the Officers.

54. At no time did Defendant Officers Houck, Miller or O'Rourke observe the Decedent acting erratically. Nonetheless, Officer Houck, while armed and in uniform, unreasonably escalated the situation.

55. Officer Houck began to question the Decedent but did not listen to his requests. Officers Houck, Miller, and O'Rourke then escalated the encounter by:

    a. Quickly walking towards the Decedent after he simply asked them to identify themselves,
    b. Surrounding him,
    c. Grabbing at his hands and body,
    d. Tackling him to the ground twice,
    e. Kicking and punching him and
    f. Tasering him multiple times simultaneously from two (2) taser weapons.

56. The Decedent was visibly afraid of the officers and continued to request that they identify themselves while doing so he had his hands raised; and repeatedly stated, "I asked a simple question."

57. Officers Houck, O'Rourke, and Miller dismissed and ignored his repeated requests and quickly attempted to surround him while reaching for his hands to place him into custody.

58. The Decedent then attempted to present his identification to Officers Houck, Miller, and O'Rourke. Despite the Decedent's attempt to deescalate the matter, the Defendant Officers continued to escalate the situation. The Decedent responded by retreating into the street. At _no point_ did the Decedent strike, kick, punch or attempt to harm the police or any third parties.

59. The Decedent became visibly afraid. He shouted, "Please just listen" and "I don't want to die," and then began to run from the Defendant Officers.

60. Officer O'Rourke tackled the Decedent, while Officers Houck and Miller simply watched. The Decedent can be heard saying "Don't tase me" and continued to run.

61. Officers O'Rourke and Miller then drew their taser weapons and began to chase the Decedent.

62. It is believed and therefore averred that none of the Defendant Officers had probable cause to chase or arrest the Decedent or employ any measure of force to arrest him.

63. Officer O'Rourke then tackled the Decedent to the ground. Then both he and Officer Miller deployed their taser weapons simultaneously and electrocuted the Decedent.

64. During they video of the incident, the Defendant Officers can be heard giving simultaneous commands that the Decedent could not comprehend or comply with while he was being repeatedly tasered (via prong and drive stun).

65. The Decedent, while being tasered simultaneously by two (2) officers, can be heard saying, "Please don't kill me."

66. A video of the interaction shows that Officers Miller, O'Rourke, and Houck unreasonably escalated the matter by yelling at Mr. Von Earl Beckworth-Thompson, giving him conflicting orders, and then employing their tasers and electrocuting him with multiple taser applications without providing him with a reasonable opportunity to comply with their commands.

67. The Decedent, a thirty-four (34) year old black man who was being investigated by the New Castle police for screaming for help, was subjected to over thirty-eight (38) seconds of electrical current from two (2) taser weapons which emit fifty thousand (50,000) volts of electricity per second.

68. During the course of the Decedent's arrest, approximately one hundred thousand (100,000) volts of electricity were introduced to his body.

69. The Decedent received taser strikes to the front and rear sides of his body causing him to go into cardiac arrest shortly thereafter.

70. Upon information and belief, the electric current administered to Mr. Von Earl Beckworth-Thompson caused him extreme pain, suffering and mental anguish.

71. During the arrest, Mr. Von Earl Beckworth-Thompson told the police that he could not breathe. All Defendant Officers knew or should have known that he needed medical care, and knew he was subjected to force:

   a. He was tackled twice by officer O'Rourke and punched by Officer Miller while he wore a metal ring on his hand which caused Decedent to bleed profusely from his face and head, and;

   b. He was tasered nine (9) times which subjected his body to one hundred (100,000) thousand volts of electricity over a period of thirty-eight (38) seconds.

72. The Defendant Officers knew or should have known that tasering an individual simultaneously would likely lead to cardiac arrest.

73. The Defendant Officers knew that Mr. Von Earl Beckworth-Thompson had been subjected to multiple taser applications to his front and rear and was bleeding from his face and head but *did not* immediately provide him with medical treatment.

74. The live video feed from the Defendant officers body cam footage shows the Decedent laid on the ground, his medical condition quickly deteriorated. All the Defendant Officers realized he had only a faint pulse.

75. At about this same time, medics and/or dispatch informed the officers that medics were still a considerable distance from the scene.

76. All the Defendant Officers unreasonably believed that the Decedent was over-dosing and gave him Narcan instead of performing Cardiopulmonary Resuscitation (CPR) on him or transporting him to a hospital when they knew or should have known that the emergency medical care would be delayed.

77. The live video feed from the body cam footage shows that Mr. Von Earl Beckworth-Thompson stopped talking or moving and was bleeding profusely from his face and head. Despite these medically serious observations, the Defendant Officers did nothing to provide him with the medical attention he desperately needed given his extreme medical distress.

78. After the officers tasered and struck the Decedent, and after he repeatedly yelled out that he could not breathe, and while he was lying on his stomach, handcuffed, officers congratulated each other in a playful manner.

79. As a consequence of his death, the Decedent was deprived of the pleasures and enjoyment of life, liberty, and the pursuit of happiness.

80. The City of New Castle previously failed to discipline Officers Houck, Miller, and O'Rourke and, as such, tacitly approved their actions.

## COUNT ONE

**42 U.S.C. § 1983: ILLEGAL SEARCH AND SEIZURE AND USE OF EXCESSIVE FORCE IN VIOLATION OF MR. VON EARL BECKWORTH-THOMPSON'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AGAINST OFFICERS HALIE ELIZABETH HOUK, individually and in her official capacity, ANDREW O'ROURKE, individually and in his official capacity and OFFICER NATHANIEL MILLER, individually and in his official capacity.**

81. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

82. Officers Houck, Miller, and O'Rourke unreasonably seized Mr. Von Earl Beckworth-Thompson without probable cause when they took him into custody.

83. Officers Houck, Miller, and O'Rourke immediately escalated the situation with the Decedent and engaged with him in a confrontational, aggressive manner and unreasonably refused to answer his questions or communicate with him in a respectful manner, despite having no information or evidence that he was a danger or had committed a crime or was in possession of a weapon or contraband.

84. Officers Houck, Miller, and O'Rourke unreasonably detained Mr. Von Earl Beckworth-Thompson without any information that would allow them to believe that he was armed and/or dangerous to others or a danger to himself or was in possession of contraband or a weapon.

85. Officers Houck, Miller, and O'Rourke unreasonably seized Mr. Von Earl Beckworth-Thompson without a warrant and without probable cause. They had no evidence that he had committed a crime or was in possession of any contraband at the time they seized him at Adams Street and Stanton Avenue in New Castle, Pennsylvania.

86. Despite lacking probable cause to detain the Decedent, Officers Miller and O'Rourke used unreasonable force against Mr. Von Earl Beckworth-Thompson each time they intentionally caused electricity to enter into his body through their uses of tasers.

87. According to information and belief, this occurred more than nine (9) times during the course of his arrest subjecting him to one hundred  thousand (100,000) volts of electricity for over thirty-eight (38) seconds.

88. At the time Officers Miller and O'Rourke each tasered Mr. Von Earl Beckworth-Thompson's body, causing him to receive one hundred (100) thousand volts of electricity, the Officers were already aware that the Decedent was not suspected of having committed any serious and/or violent crime; rather, they knew only that he had been knocking on doors and requesting help.

89. Officers Miller and O'Rourke tasered Mr. Von Earl Beckworth-Thompson simultaneously, thus subjecting him to double the amount of voltage which normally would accompany the use of the device.

90. Officers Miller and O'Rourke continually, for 38 seconds, delivered taser shocks to Mr. Von Earl Beckworth-Thompson, preventing him any opportunity to comply with their unreasonable demands.

91. Additionally, no one, including and especially Officers Houck, Miller, and O'Rourke, was in any danger from Mr. Von Earl Beckworth-Thompson.

92. Mr. Von Earl Beckworth-Thompson was not actively resisting arrest nor otherwise attempting to harm anyone including Officers Houck, Miller, and O'Rourke. Nor was he otherwise an immediate threat to anyone or fleeing from a serious crime.

93. Upon information and belief, Officers Houck and Miller employed their taser weapons against the Decedent for the purpose of causing him pain to force him to submit to an illegal search and seizure.

94. Neither Officer O'Rourke nor Miller provided the Decedent with a reasonable opportunity to comply with their demands before they simultaneously tasered him.

95. Moreover, upon information and belief Officers Miller and O'Rourke knew or should have known that such use of their taser violated commonly understood taser guidelines and the City of New Castle Police Department's Taser Policy, to control actively resisting subjects.

96. Said acts by Officers Houck, Miller and O'Rourke described in this count were all taken under the color of state law and in their individual and official capacities and/or within the scope of their employment with the New Castle City Police Department and contrary to the policies regarding the use and exercise of their police powers, and thus, deprived the Decedent of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

97. Previous to being tasered, Officer O'Rourke had tackled the Decedent causing him to fall and sustain significant injuries to his face and body; this seizure was unreasonably forceful and not supported by probable cause that Decedent had committed a crime.

98. Additionally, by admission, Officer Miller with an apparent metal ring on his finger, struck the Decedent in the face multiple times.

99. After being tasered and after handcuffs were placed upon the Decedent and while he laid in a prone position on his stomach, Officer O'Rourke unnecessarily and violently administered numerous knee strikes to the Decedent's rib cage, despite Decedent's inability to move and his compliance.

100. Officer O'Rourke knew that the Decedent was having acute difficulty with breathing. Furthermore, he knew or should have known that striking the Decedent with his knee

into his rib cage with vicious and disabling strikes would further complicate or hinder the Decedent's ability to breathe and cause him additional pain.

101. As a direct and proximate result of said violations, Mr. Von Earl Beckworth-Thompson suffered the injuries and death described above and damages in an amount to be determined at trial.

## COUNT TWO

**42 U.S.C § 1985: CONSPIRACY TO VIOLATE RIGHTS SECURED UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST OFFICERS HALIE ELIZABETH HOUK, individually and in her official capacity, OFFICER ANDREW O'ROURKE, individually and in his official capacity and OFFICER NATHANIEL MILLER, individually and in his official capacity.**

102. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

103. The Defendant Officers conspired to deny the Decedent's rights under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1985.

104. Said conspiracy included, but is not limited to, the filing of false or misleading reports regarding the circumstances of Mr. Von Earl Beckworth-Thompson's death and the issuance of inaccurate statements by the city or its employees regarding the circumstances of the Decedent's seizure and search by the Defendants and the use of excessive force and the improper use of Tasers.

105. Said conspiracy was designed to prevent the family and the public from learning the true circumstances regarding Mr. Von Earl Beckworth-Thompson's death and constituted a cover-up for the purpose of denying Mr. Von Earl Beckworth-Thompson's estate access to the courts.

106. As a direct and proximate result of said violation, Mr. Von Earl Beckworth-Thompson's family had to take additional steps including but not limited to the initiation of litigation to learn the truth of Mr. Von Earl Beckworth-Thompson's demise.

## COUNT THREE

**42 U.S.C. § 1983: FAILURE TO INTERVENE AGAINST
OFFICERS HALIE ELIZABETH HOUK, individually and in her official capacity,
OFFICER ANDREW O'ROURKE, individually and in his official capacity and
OFFICER NATHANIEL MILLER, individually and in his official capacity**

107. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

108. While Officer O'Rourke struck the Decedent with his knee and with vicious and disabling strikes, Officers Miller and Houck were in close proximity and observed the strikes. Nevertheless, neither Officers Miller nor Houck made any attempt to protect the Decedent from Officer O'Rourke.

109. While Officer Miller struck the Decedent with his fists, Officers O'Rourke and Houck were in close proximity and observed the strikes. Nevertheless, neither Officers O'Rourke and Houck made any attempt to protect the Decedent from Officer Miller.

110. Officers Miller and O'Rourke improperly used a taser against Mr. Von Earl Beckworth-Thompson, despite not having probable cause to detain him, and despite employing the tasers in an improper and excessive manner.

111. Meanwhile, Officer Houck was in close proximity and observed the tasering and despite having a sufficient opportunity to intervene, she failed to protect the Decedent from her fellow officers.

112. The simultaneously employed tasers were used for approximately thirty eight (38) seconds, giving Officer Houck ample opportunity to beseech her colleagues to terminate the use of force.

113. As a direct and proximate result of these failures to intervene, Mr. Von Earl Beckworth-Thompson suffered the injuries and death described above and damages in an amount to be determined at trial.

## COUNT FOUR

**42 U.S.C. § 1983: DELIBERATE INDIFFERENCE TO MEDICAL NEEDS AGAINST
OFFICERS HALIE ELIZABETH HOUK, individually and in her official capacity,
ANDREW O'ROURKE, individually and in his official capacity, and OFFICER
NATHANIEL MILLER, individually and in his official capacity**

114.  Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

115. Upon information and belief --  including but not exclusively limited to the fact that the Defendant Officers were standing in close proximity to Mr. Von Earl Beckworth-Thompson when he was screaming for help, was telling them he could <u>NOT</u> breathe, and was tased multiple times -- the Defendant Officers knew or should have known that:

   a. Mr. Von Earl Beckworth-Thompson was subjected to *<u>one hundred (100,000) thousand volts of electricity</u>* over the course of thirty-eight (38) seconds as a result of being tased multiple times by two taser weapons (50,000 volts per taser weapon),
   b. Mr. Von Earl Beckworth-Thompson was *<u>forcibly handcuffed</u>*,
   c. Mr. Von Earl Beckworth-Thompson was twice tackled by Officer O'Rourke, leaving him *<u>bleeding badly from his face and head</u>*,
   d. Had been punched in the head multiple times,
   e. He was having *<u>difficulty breathing</u>* and was *<u>sweating profusely</u>*, and,
   f. He was in immediate need of medical treatment.

116. Despite the Defendant Officers' knowledge of the Decedent's deteriorating medical condition, caused by the Officers' own actions, they failed to assess his medical condition and failed to provide or obtain for him life-sustaining care.

117. The Defendant Officers, acting under color of state law, deprived Mr. Von Earl Beckworth-Thompson of his rights under the Fourteenth Amendments to the United States Constitution, by preventing and denying him critical medical attention. These Defendants knew that Mr. Von Earl Beckworth-Thompson needed medical treatment, yet they:

   a. Failed to assess Mr. Von Earl Beckworth-Thompson's condition, despite him being tased multiple times and then forcibly handcuffed and despite observing that he was bleeding, was sweating, had difficulty breathing, and otherwise was showing clear signs of significant medical distress;

   b. Left Mr. Von Earl Beckworth-Thompson laying on his stomach for an unreasonable period of time, without checking his medical condition but while watching him medically deteriorate;

   c. Failed to remove his handcuffs or to turn him over when they realized he was not breathing or breathing very shallowly, thus allowing him to suffer positional asphyxia, which was particularly likely given his large size;

    d.  Failed to provide him CPR when they realized he had no pulse, and;

    e.  Failed to take Mr. Von Earl Beckworth-Thompson to a nearby hospital which was located minutes away by vehicle.

118. As a direct and proximate result of the above actions, these Defendants:
    a.  Prevented Mr. Von Earl Beckworth-Thompson from obtaining timely medical care,
    b.  Prolonged his pain and suffering, and
    c.  Caused his injuries to worsen.
all of which proximately caused his death.

119. It is believed and therefore averred that these Defendants' actions and/or inactions also violated city policy, which mandates that in any use of a taser (whether by drive stun or probes), if the arrestee shows any signs indicating a need for medical treatment (which Mr. Von Earl Beckworth-Thompson did), the officers are required to immediately assess the arrestee and/or treat the arrestee and/or provide medical treatment to the arrestee in a reasonable manner.

120. It is believed and therefore averred that these Defendants' actions and/or inactions also violated city policy, which mandates that in any use of a taser (whether by drive stun or probes), officers must have an arrestee medically assessed and released by the closest hospital with an emergency room as soon as possible.

121. Upon information and belief, the delay in assessing Mr. Von Earl Beckworth-Thompson's condition and providing him with medical treatment materially reduced his chances of survival and proximately caused his injuries, pain, suffering, and death, for which Defendants must pay damages.

### COUNT FIVE
### 42 U.S.C. § 1983: MONELL LIABILITY CLAIMS
### AGAINST CITY OF NEW CASTLE

122. Plaintiff repeats, reiterates and realleges each and every allegation contained herein above with the same force and effect as if hereinafter set forth at length.

123. It is averred that the Defendant City of New Castle knowingly permits a custom of deliberate indifference by its police department in the screening of its officers for hire. As a direct and proximate result of this custom, it is highly likely that incompetent individuals,

including but not limited to Officers Houck, Miller, and O'Rourke, were hired as police officers for the City of New Castle. Furthermore, this incompetence substantially increased the risk that these incompetent officers would violate the civil rights of civilians such as Mr. Von Earl Beckworth-Thompson, who was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad additional example of this custom.

124. It is averred that the Defendant City of New Castle knowingly permits a custom of deliberate indifference by its police department in allowing its officers to conduct unreasonable searches and seizures and in failing to discipline officers who conduct unreasonable searches and seizures. As a direct and proximate result of this custom, it is highly likely that officers, including but not limited to Officers Houck, Miller, and O'Rourke, are unable to recognize when a search and or seizure is legal or not. This substantially increases the risk that these incompetent officers would violate the civil rights of civilians such as Mr. Von Earl Beckworth-Thompson, who was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad additional example of this custom.

125. The Defendant City of New Castle lacks a policy, despite the extremely high likelihood that in the course and scope of a police officer's duties, that they would physically confront suspects or otherwise gain custody of a person in need of medical care, requiring the arresting officer, officer in charge, or any other officer on scene to medically assess the arrestee. As a direct and proximate result of the absence of this policy, and as is highly likely, medical assessment and/or treatment is delayed for arrestees. This substantially increases the risk that officers would violate the civil rights of, *inter alia*, Mr. Von Earl Beckworth-Thompson, who was injured and died as a direct and proximate result of the absence of this policy.

126. The Defendant City knowingly permits a custom of officers not taking arrestees to a hospital. As a direct and proximate result of this custom, it is highly likely that medical assessment and/or treatment is delayed for arrestees. This substantially increases the risk that officers would violate the civil rights of civilians, such as Mr. Von Earl Beckworth-Thompson, whose injuries were exacerbated, and he died, as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad additional example of this custom.

127. The Defendant City knowingly permits a custom of deliberate indifference in the training, supervision, and discipline of its police officers. Specifically, the police department failed to train its officers -- including Officers Houck, Miller, and O'Rourke -- the proper procedures regarding how to legally stop, frisk, search, and/or arrest a suspect,

the proper use of force including tasers, and the proper administration of medical assessment and/or treatment of arrestees.

128. The City also permits a custom of failing to supervise or discipline officers who improperly and/or illegally stop, frisk, search, and/or arrest suspects, use improper and/or illegal force including tasers, and improperly administer medical treatment to arrestees.

129. Although such failures are likely to result in constitutional violations, the Defendant City allows officers, including but not limited to Officer Houck, Miller, and O'Rourke, to remain on its' force. This substantially increases the risk that these officers would violate the civil rights of civilians, such as Mr. Von Earl Beckworth-Thompson, who was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad additional example of this custom.

130. As a direct and proximate result of the above referenced customs and/or lack of policies, Mr. Von Earl Beckworth-Thompson suffered the injuries and death described above and damages in an amount to be determined at trial.

## COUNT SIX

**42 Pa.C.S. § 8301-8302:  WRONGFUL DEATH and SURVIVAL AGAINST CITY OF NEW CASTLE AND OFFICERS HALIE ELIZABETH HOUK, individually and in her official capacity, ANDREW O'ROURKE, individually and in his official capacity, and OFFICER NATHANIEL MILLER, individually and in his official capacity**

131. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

132. This count is brought for the benefit of Mr. Von Earl Beckworth-Thompson's beneficiary: M.B., the Decedent's minor child.

133. The Defendant Officers, acting within the scope of their employment, negligently and recklessly caused the death of Mr. Von Earl Beckworth-Thompson, as previously described in this lawsuit.

134. Defendant City of New Castle is responsible for its employees' actions taken in the scope of their employment as police officers.

135. As a direct and proximate result of said violations, Mr. Von Earl Beckworth-Thompson and his estate incurred pain and suffering, medical expenses, funeral expenses, and

expenses related to the administration of the Estate, for which recovery is due to the Estate's beneficiary: M.B., the Decedent's minor child.

136. Additionally, the Estate's beneficiary -- M.B. his minor child -- is entitled to compensation for the loss of the Decedent and the antecedent benefits to him being alive including, *inter alia*, love, guidance, and care.

137. The Defendants' misconduct was performed maliciously, wantonly, and recklessly.

## <u>COUNT SEVEN</u>

**BATTERY UNDER PENNSYLVANIA COMMON LAW AGAINST CITY OF NEW CASTLE AND OFFICERS ANDREW O'ROURKE, individually and in his official capacity, and OFFICER NATHANIEL MILLER, individually and in his official capacity.**

138. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

139. Officers Miller and O'Rourke, acting within the scope of their employment, knowingly and intentionally battered Mr. Von Earl Beckworth-Thompson as described above.

140. Specifically, Officer Miller kicked and punched the Decedent while wearing a metal ring on his hand.

141. Specifically, Officer O'Rourke subjected the decedent to multiple knee strikes to the Decedent's body.

142. Officer Miller's, and O'Rourke's actions were not justified nor warranted under the circumstances and constituted the unreasonable and unnecessary use of force.

143. Officer Miller's, and O'Rourke's actions directly and proximately caused Mr. Von Earl Beckworth-Thompson to be injured and suffer damages.

144. Defendant, City of New Castle, as the employer of Officers Miller, and O'Rourke, is responsible for their wrongdoing under the doctrine of respondent superior.

145. The Defendants' misconduct was performed maliciously, wantonly, and recklessly.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(A) An order declaring that Defendants' conduct violated the Decedent's rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B) An order granting compensatory damages, jointly and severally where appropriate, in an amount to be determined at trial;

(C) An order awarding punitive damages against the individual defendants (not the City of New Castle) in an amount to be determined at trial; and

(D) An order awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988, as well as any other relief that this Court finds appropriate and based on the evidence at trial.

**JURY TRIAL DEMANDED**.

TODD J. HOLLIS LAW

By: /s/ Todd J. Hollis
Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510

202 Penn Plaza
Turtle Creek, Pennsylvania 15145
412.515.4483 Phone
412.646.5748 Facsimile
toddjhollis@gmail.com
Counsel for the Plaintiffs:
**ASHLEY BECKWORTH**, Individually
and as administratrix of the Estate of Albert
Von Beckworth-Thompson, Decedent, and
on behalf of the Estate's sole beneficiary,
M.B. his minor child.
.

Date:  November 29, 2023